## Cumberland State Bank v. Ison, By, etc.

(Decided February 18, 1927.)

### Appeal from Harlan Circuit Court.

1. **Malicious Prosecution—Petition Alleging False Arrest Procured by Cashier Held to State Good Cause of Action Against Bank for Malicious Prosecution.**—Bank cashier, particularly in rural districts, being in most instances the sole one in charge of bank's affairs between meetings of directors, apparently would have authority to file affidavit to procure arrest of one alleged to have broken into bank; hence petition in suit for malicious prosecution against bank alleging plaintiff's arrest was procured by bank cashier held to state a good cause of action.

2. **Malicious Prosecution—Testimony Cashier Did Not Have Specific Authority to Institute Criminal Proceedings Held Inadmissible in Suit Against Bank for Malicious Prosecution.**—In suit against bank for malicious prosecution for false arrest alleged to have been procured by cashier, refusal to admit testimony that cashier had not been granted specific authority to institute criminal proceedings held not error, since cashier did not need specific authority; question being whether action came within scope of duty as cashier of bank.

3. **Malicious Prosecution—Bank is Liable for Act of Cashier Instigating Prosecution Maliciously and Without Probable Cause.**—If cashier, acting as bank's agent, was proximate and efficient cause of instigating criminal prosecution maliciously and without probable cause, bank is liable for his acts.

4. **Malicious Prosecution—Bank's Responsibility for Cashier's Participation in Malicious Prosecution Held for Jury.**—Evidence in suit against bank for malicious prosecution for false arrest that cashier set the law in motion against plaintiff held sufficient for jury.

5. Malicious Prosecution—Testimony Cashier of Bank Had Probable Cause for Procuring Arrest Held Admissible.—In action against bank for malicious prosecution, refusal to permit cashier to testify that, prior to plaintiff's arrest, he knew that bloodhounds had trailed to plaintiff's home, and that they were full-blooded, well-trained bloodhounds, held erroneous, since, if he had probable cause in procuring plaintiff's arrest, neither he nor bank can be held responsible therefor.

6. Malicious Prosecution—Refusal to Permit Cashier of Bank to Testify he Acted in Individual Capacity in Causing Prosecution Held Erroneous.—In suit against bank for malicious prosecution because of false arrest alleged to have been procured by cashier, refusal to permit cashier to testify that action taken by him was in individual capacity, and not as cashier or agent of bank, held erroneous.

7. Trial—Instruction Assuming Cashier Acted as Agent of Defendant Bank in Prosecuting Plaintiff Held Erroneous Under Offered Evidence.—Instruction, in action against bank for malicious prosecution, assuming that cashier by setting law in motion against plaintiff did so as bank's agent, held erroneous, in view of offered testimony tending to show cashier acted for himself and not for bank.

8. Malicious Prosecution—Bank Does Not Ratify Act of Cashier in Procuring Arrest by Subsequent Participation in Criminal Proceedings.—Bank does not ratify cashier's act in securing arrest for breaking into bank by appearance of vice president and cashier as witnesses in criminal proceedings, and taking part therein so as to make bank liable thereafter for malicious prosecution.

9. Trial—Instruction Authorizing Recovery for Expense in Defending Prosecution Held Erroneous, where Neither Pleaded nor Proven.—Instruction, in suit for malicious prosecution, authorizing recovery for expenses in defending prosecution, held erroneous, where such matter was neither pleaded nor proven.

10. Malicious Prosecution—Instruction on Probable Cause Held Erroneous.—Instruction, in suit for malicious prosecution, requiring jury to believe, before acquittal on ground of probable cause for instigating criminal prosecution was authorized, that grounds existed as would have induced ordinary man to believe plaintiff had broken into bank and taken bank's money held erroneous, where plaintiff had only been accused of breaking into bank with intent to steal money.

HALL, LEE & SNYDER for appellant.

POPE & HUFF for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

About midnight of January 7, 1925, the glass in the front door of the bank of the appellant, located in Poor

Fork, Harlan county, Kentucky, was broken by a missile around which a rag had been wrapped. The miscreant then opened the door by inserting his hand through the hole thus made and turning the key, in doing which he cut his hand, and thus caused some blood to drop upon the floor. Before daylight the breaking was discovered, and bloodhounds were put at once on the supposed trail of the miscreant. These bloodhounds trailed to the home of the appellee, who lived in a hollow near Poor Fork, arriving there just at "blue dawn." The appellee came to the door of his home, but it seems that the dogs made no effort to attack him. The dogs then trailed on up the hollow in which appellee lived; their further movements being of no interest in this litigation. About 8 o'clock that morning the appellee left his home, and went some 25 miles over the mountains into Letcher county. He claims that he went on this trip, which had been planned for several days in advance, in order to buy some cattle for his father to butcher. That afternoon two deputy sheriffs of Harlan county left Poor Fork in pursuit of the appellee. One of these deputy sheriffs admits he had no warrant, but says that he was requested to make the trip by the other deputy sheriff. This other deputy sheriff says that he had a warrant for the arrest of the appellee, and that it was signed by Leonard Huff, the cashier of the appellant, but that this warrant had been lost. Of course, it is obvious that, if he had any warrant with Huff's name signed to it, the signature must have been to the affidavit on which the warrant issued, as Huff was not a public officer, and had no authority to issue warrants. It appears that earlier in the afternoon, and before the deputy sheriffs set out, the father of another boy who was said to be implicated in the trouble besought Huff to wait until the appellee got back from Letcher county, assuring Huff that the appellee would return in a day or two. Whereupon, as this witness testifies, Huff said: "Yes, he'll be back. I will see he is brought back." The deputy sheriffs found appellee over in Letcher county with two or three head of cattle. They testified that when they found him he said that he expected to be followed, and would go back with them; also that he had a cut on his hand, which he attributed to a scratch he got from a nail in the door of his home which he had opened when the bloodhounds came to his house the morning after the breaking. The appellee denied that he made

the statement that he expected to be followed, although he admitted that he agreed to go back with the deputy sheriffs. He said that he did not know that the bank had been broken into, and that, when the men came with the bloodhounds to his house on the morning after the breaking, they told him that they were in search of a man who had hit another man in the head down in Poor Fork the night before. The appellee returned to Poor Fork with the deputy sheriffs, arriving late in the evening. If they had a warrant, it was never read nor shown to him. The appellee was allowed by the police judge of Poor Fork to go on his own recognizance, and his trial was set for the following day. On the day of the trial the police judge of Poor Fork before whom the hearing was set endeavored to get Leonard Huff and the vice-president of the appellant to make an affidavit on which to issue a warrant for the arrest of the appellee. The police judge seemed to be of the impression that this was needed to "keep the record straight," as he said. The vice-president declined to make such an affidavit, as did also Leonard Huff at that time, both of them declaring that they knew nothing of the facts, and hence could not make an affidavit. Later, however, Huff did sign an affidavit, which he claims is the only one he ever signed, to the effect that "one Fred Holcomb and others" entered the closed doors of the appellant bank for the purpose of taking money therefrom. On this affidavit the police judge issued another warrant, if he had theretofore issued the one which the deputy sheriff said they had on their trip to Letcher county. This warrant was then served on appellee, although he was then already under arrest. On the trial of the appellee that afternoon, he was dismissed. It may be said in passing that the miscreant was afterwards found to be one France, who confessed the offense, and was sent to the school of reform for it. After his dismissal, the appellee brought this suit against the appellant for malicious prosecution, and on the trial secured a verdict and judgment for $1,000.00, to reverse which the appellant brings this appeal.

Many grounds are urged for reversal. First, it is insisted that the demurrer to the petition should have been sustained. The position of the appellant in this regard is based on the same assumption as is one of its grounds urged for a peremptory instruction, and as is its position

with reference to the admission and rejection of certain testimony. It is argued that Leonard Huff, simply as the cashier of the appellant, had no authority to institute any criminal proceedings against the appellee, and hence the appellant is not liable for whatever he did in this regard. We cannot agree with this contention of appellant. The cashier is one of the most important officers connected with banking institutions, especially those in rural districts and small towns such as Poor Fork. He is in most instances the sole one in charge of the bank's affairs in the interim between the meetings of the directors. He has a broad discretion in the protection of the bank's property and the bank's affairs, and it cannot be said that in a case like this one it is not incident to his duties to take such steps as may be reasonably necessary to protect his bank and its property. At least he would have such authority, unless it was expressly withheld from him, and such does not appear to have been done in this case. We are therefore of the opinion that the petition stated a good cause of action.

It follows also that the court committed no error in refusing to admit testimony to the effect that Huff had not been granted specific authority by the bank to institute criminal proceedings. This case does not turn on whether Huff had such specific authority, but on whether his action came within the scope of his duties as cashier of the bank and as we have seen it did. And for the same reason the first ground urged by appellant in support of its motion for a peremptory instruction is without merit; that ground being, as stated, that Huff as cashier had no authority to institute any criminal proceedings for appellant against appellee. The other ground on which appellant based its motion for a peremptory instruction was that there was no evidence that Huff set the law in motion against the appellee. The evidence of the witness to the effect that, before the deputy sheriff set out after the appellee, Huff had stated that he would see that the appellee was brought back, at least furnishes the scintilla necessary to carry this case to the jury. The breaking here being a felony, it was not indispensable that the arresting officers have a warrant. Criminal Code, section 36. Further, one deputy sheriff said he did have a warrant "signed by Huff." The police judge could not remember whether Huff signed two affidavits or only one;

his impression being that there were two. Although Huff said he signed but one, it was for the jury to say what was the truth from these conflicting statements. If Huff, acting as the agent of the appellant, was the proximate and efficient cause of instigating the prosecution, and did so maliciously and without probable cause, the appellant is liable for his acts. McClarty v. Bickel, 155 Ky. 254, 159 S. W. 783, 50 L. R. A. (N. S.) 392; Ballard v. Cash, 191 Ky. 312, 230 S. W. 48; Stewart Dry Goods Co. v. Arnold, 158 Ky. 241, 164 S. W. 785. So if he, as such agent, procured the deputy sheriffs to arrest appellee with or without a warrant, the appellant is responsible. See Huggins v. Toler, 1 Bush 192. And lastly, although the appellee may have been arrested without the procurement of Huff, yet, if it was the purpose of the police judge to discharge the appellee for lack of a warrant, and Huff signed an affidavit in order that a warrant might be issued to the end that the appellee might be prosecuted, and by reason of this warrant the appellee was prosecuted, then the appellant must answer for Huff's acts if Huff was then acting as its agent. Cf. Bazzell v. I. C. R. Co., 203 Ky. 626, 262 S. W. 966. In such a state of case Huff would be the proximate and efficient cause of instigating the prosecution on which appellee was tried and acquitted. It follows, therefore, that appellant's motion for a peremptory instruction was properly over-ruled.

Turning our attention to appellant's complaint about the admission and rejection of testimony, we think the court erred in refusing to permit Huff to testify that prior to appellee's arrest he knew that the bloodhounds had trailed to the appellee's home, and that they were full-blooded, well-trained bloodhounds. Although Huff, either individually or as agent for appellant, may have set the law in motion against the appellee, yet, if he had probable cause for so doing, neither he nor the appellant can be held responsible therefor. The rejected testimony should have been admitted, for it tended to establish probable cause for Huff instigating criminal proceedings against the appellee, if he did so. We also think the court committed error in refusing to permit Huff to testify that in whatever action he took against appellee, he did so in his individual capacity, and not as cashier or agent of the bank, and that he acted individually because he

was personally interested in, and responsible for, the money in the bank. As said in 38 C. J. 455:

"Where the agent institutes the prosecution of his own volition for the purpose of subserving his own personal interest the corporation is not liable. And it has been held that this is so even though the act of the agent might otherwise have been in the course and within the scope of his agency."

We do not mean to say that this testimony of Huff concluded the matter, because it was for the jury to say whether or not it believed this statement of his, or believed from all the facts and circumstances of this case that he was acting for the appellant as its cashier. But the appellant was at least entitled to whatever weight the jury chose to give to this testimony of Huff.

Appellant's last complaint is directed to the instructions. Instruction No. 1 is erroneous because it assumes that Huff, if he set the law in motion against the appellee, did so as the agent of the bank. Probably in the absence of any testimony that Huff was acting individually, the assumption the court made in this instruction would not be error. But, as we have pointed out above, the court erroneously excluded testimony tending to show that Huff acted for himself and not for the appellant. With such testimony in the case the court should not assume that Huff in whatever he did acted as the agent of the appellant, but should leave to the jury the question whether Huff did so, or acted in his individual capacity. Instruction No. 2 should be omitted entirely. This instruction was based on the idea that, as the vice-president of the appellant and Huff, its cashier, had appeared as witnesses in the criminal proceedings against the appellee, and had probably suggested to the person acting as prosecuting attorney certain questions to be propounded to the witnesses, the appellant thus ratified whatever Huff had unauthorizedly done before. This is not the law. In McClarty v. Bickel, *supra,* we said that no liability for malicious prosecution attaches against one by reason of one's testifying as a witness for the prosecution. The suggestions made to the acting prosecuting attorney do not rise to the dignity of a ratification of Huff's acts, as the things relied upon by the appellee for a ratification do not in law amount to such. Instruction No. 4 should be omitted, as it is covered by instruc-

tion No. 8.  Instruction No. 5 is correct.  There should be omitted from instruction No. 6 that part authorizing the jury to award the appellee such sum as they might believe he was required to expend in defending the prosecution because this matter was neither pleaded nor proved.  Instruction No. 7 bearing on malice is substantially correct.  Instruction No. 8 is erroneous.  In the case of Schwartz v. Boswell, 156 Ky. 103, 160 S. W. 748, we said:

> "Whether certain facts constitute probable cause is a question of law for the court, but whether such facts are proven is for the jury.  So, the court should have instructed the jury hypothetically within the range of facts which the evidence tends to establish as to what would constitute probable cause and thus have left to the jury the determination only of whether such facts were proven."

In that case a form for an instruction on probable cause is given.  Instruction No. 8 as given by the court in this case substantially followed this form, but it is erroneous, in that it required the jury to believe, before it could acquit the appellant on the ground that Huff had probable cause for instigating the criminal prosecution against the appellee, if he did so, that Huff in instituting such criminal proceedings had such grounds as would have induced a man of ordinary prudence to believe that the appellee had broken into the bank and had taken therefrom the bank's money and converted it to his use.  The error in this instruction lies in the fact that Huff never accused the appellee of taking any of the appellant's money, nor did he ever prosecute the appellee for any such offense.  No one contended that any money of the bank had been stolen.  The charge was breaking into the bank with intent to steal its money.  As there was no evidence or contention that any money of the bank had been stolen, this instruction as given destroyed the appellant's defense of probable cause.  Such is manifest error.

For the reasons herein indicated, the judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.