## DAUGHTRY v. BLANKET STATE BANK et al.

### No. 7624.

Court of Civil Appeals of Texas. Austin.

July 15, 1931.

Rehearing Denied July 25, 1931.

McGaugh & Darroch, of Brownwood, for appellant.

Woodruff & Holloway, of Brownwood, for appellees.

BLAIR, J.

Appellant, Ellis Daughtry, sued appellees, the Blanket State Bank, and its president and cashier, W. J. Richmond and S. E. Lacy, for damages resulting from the wrongful dishonor of his check for $500 given to J. S. Beck in payment of cattle, alleging that for several months prior to the time appellant gave the check he had been engaged in buying and selling live stock, and had made arrangements with appellee bank through its appellee officers to cash his checks given in payment of live stock, and that upon sale of the live stock the proceeds would be deposited to the credit of the bank, and that, if there were overdrafts, the bank would carry same as loans drawing interest; that appellees refused to pay the $500 check when presented for payment; that before the check was presented appellant had sold and shipped the cattle purchased from Beck and had deposited the net proceeds of $400 to the credit of appellee bank, and of which deposit all of the appellees had knowledge when payment on the check was refused; that the appellee bank and its appellee officers misappropriated the $400

thus deposited, and applied same as a credit upon a note executed by Perry Daughtry to appellee bank with appellant as surety, and which note was not due and was secured by other property; that, when Beck made inquiry of appellees as to whether the proceeds of the sale of the cattle had been deposited in appellee bank, he was informed by the appellees that no such deposit had been made, and all appellees, acting together and for the purpose of protecting the appellee bank and themselves in the unlawful conversion of the $400, told Beck that appellant was a "financial crook," and that, if Beck would prosecute appellant for giving the check and have him arrested, he would get his money; that in thus advising Beck appellees were acting together with the design and for the purpose of injuring and harassing the appellant and for the further purpose of protecting appellee bank and its appellee officers in the unlawful conversion of the $400 realized from the sale of Beck's cattle; that, acting upon and being influenced by the aforesaid statements and conduct of appellees, Beck filed a complaint charging appellant with swindling of more than $50 on account of the dishonor by appellee bank of the check; that upon this complaint appellant was arrested and held under bail to await the action of the grand jury; that after filing the complaint Beck inquired through his attorney by letter whether appellant had deposited the proceeds of the sale of the cattle in appellee bank, and whether appellant had deposited $440 of such proceeds in appellee bank, to which inquiry appellee bank, through its cashier, appellee S. E. Lacy, who, with the knowledge and consent of all the appellees, replied by letter that no such deposit had been made by appellant, and gave no information in regard to appellant having deposited $400 of such proceeds in appellee bank, thereby libeling appellant as a liar, swindler, and thief; that thereafter Beck, acting upon and being influenced by this information, continued prosecution, and the grand jury indicted appellant for swindling of more than $50 on account of the dishonor of his check by appellee bank; but that the criminal prosecution later resulted favorably to appellant, the case being dismissed on motion of the district attorney for want of sufficient evidence to convict. It was further alleged that appellee bank and its appellee officers acted together as conspirators to injure appellant in his reputation and credit as a dealer in live stock in all the unlawful acts aforementioned; that they caused him to be arrested and prosecuted for swindling, greatly embarrassing and humiliating him; that they made and caused to be made the libelous and slanderous reports and statements concerning him, thereby greatly damaging his business, his health, and causing him to incur expenses in defense of himself; and that the aforesaid acts and conduct of appellees were wanton and willful and in disregard of

his rights, and designedly done for the purpose of keeping the $400 which he had deposited as proceeds of the sale of Beck's cattle, to appellant's actual and exemplary damages in the sum of $30,500, for which he prayed judgment.

Each of the appellees filed similar special exceptions to the petition, of appellant, urging misjoinder of causes of action, which were sustained, the court holding that appellant could not join in one suit an action against the bank for breach of a contract to pay appellant's checks when presented, or to advance money under the contract with a tort action against the bank and its officers for alleged false imprisonment, malicious prosecution, slander, and libel; and, upon appellant's refusing to elect against which appellee he would proceed, the cause was dismissed; hence this appeal.

■ The court erred in sustaining the special exceptions, holding a misjoinder of causes of action in this suit. It is a settled rule in this state that, in order to avoid a multiplicity of suits, one may sue in the same action to recover damages for breach of contract and for tort, where both claims grow out of the same or related transactions, and are so immediately connected that they may be conveniently litigated together without undue prejudice to the parties, and especially is this the rule where the gist of the action is for tort rather than for breach of contract. Stuart v. Western Union Tel. Co., 66 Tex. 580, 18 S. W. 351, 59 Am. Rep. 623; Miliken & Co. v. Callahan Co., 69 Tex. 205, 6 S. W. 681; Houston, etc., Ry. Co. v. Shirley, 54 Tex. 125; Hooks v. Fitzenrieter, 76 Tex. 277, 13 S. W. 230; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Shirley v. Waco Ry. Co., 78 Tex. 131, 10 S. W. 543, in which it was held that a plaintiff might sue in one action to recover damages for breach of a road construction contract and for conversion of property by the unlawful levy of an attachment in another's name for the purpose of disrupting the contract for the construction of the road. See, also, Cumberland State Bank v. Ison, 218 Ky. 412, 291 S. W. 405; Western Nat'l Bank v. White, 62 Tex. Civ. App. 374, 131 S. W. 828; Bowden v. Bridgman (Tex. Civ. App.) 141 S. W. 1043; Ross v. Cleveland (Tex. Civ. App.) 133 S. W. 315; Kirby Lumber Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 607; Craig v. City of Dallas (Tex. Civ. App.) 20 S.W.(2d) 154; Townes' Texas Pleadings (2d) 218.

■ The gist of appellant's suit is to recover damages for false imprisonment, malicious prosecution, slander, and libel, all of which matters grew out of the wrongful dishonor of his check and the conversion of the proceeds of the sale of the cattle purchased with the check and deposited in appellee bank, the petition alleging that appellees acted together in breaching or causing the breach of the contract to pay the check; in converting

or causing to be converted the proceeds of the sale of the cattle purchased with the check and deposited in appellee bank; in thereafter making slanderous statements and writing libelous letters concerning these transactions; and in bringing about or causing the arrest, imprisonment, and prosecution of appellant on account of the dishonor of his check by appellees; and that all acts and conduct of appellees were in furtherance of a common design to protect appellee bank in its unlawful conversion of the proceeds of the sale of the cattle. These facts, as against the special exception sustained, are taken as true and constitute appellees joint tort-feasors, and, although some of them did certain acts and others did other and different acts in furtherance of the common purpose or design, they are all jointly liable for all acts done in the accomplishment of the common purpose and for the resulting damages, and the causes of action thus arising are properly joined in this suit. And, since the gist of the action is for tort rather than for breach of contract, the joint tort-feasors are properly joined in this action against the bank for breach of contract and tort, because the actions grew directly out of and are immediately connected with the same matter. That is, the petition alleges that the appellee bank, acting through its appellee officers wrongfully dishonored appellant's check, and that appellees converted the proceeds of the sale of the cattle purchased with the check and deposited in appellee bank; that thereafter appellee officers, acting together with the bank and for the purpose of protecting the bank in its unlawful conversion of the proceeds of the sale of such cattle purchased with the check, advised the payee of the check to prosecute appellant for giving the check, and in that connection uttered the slanderous statements pleaded and made the libelous statements contained in the letter. It was further alleged that the acts, slanders, and libels of each officer were done or made with the knowledge and consent of all appellees, and for the common purpose of protecting appellee bank in the conversion of the proceeds of the sale of the cattle. So, under these allegations, each fact pleaded would be admissible in evidence against each joint tort-feasor, even though he be sued separately, thereby necessitating three trials on the same state of facts. It necessarily follows that, if the same evidence can be introduced against each of the joint tort-feasors in separate suits, neither could be unduly prejudiced by being compelled to answer in the same suit; and we therefore conclude that, because the claims of appellant grew out of the same or related transactions, and because the tort actions, which are the gist of the suit, are so immediately connected with and immediately related to the entire claims of appellant, and since all actions may be conveniently litigated together without any undue prejudice to either party to the suit, they are properly joined in this action.

Appellees rely in the main upon the case of First Nat. Bank v. Mangum (Tex. Civ. App.) 176 S. W. 1197; Id. (Tex. Civ. App.) 194 S. W. 647, to sustain the action of the trial court upon the exceptions; but that case is clearly distinguishable from the case at bar. In that case it was not alleged that the damages for breach of the contract and the damages for the tort grew out of or were immediately connected with or incident to the breach of the contract. Nor was the officer of the bank in that case alleged to have acted jointly with the bank for the purpose of carrying out any common design or purpose in connection with or incident to the breach of the contract, and for which they could be held as joint tort-feasors. In the instant case the petition alleged that all acts done and complained of were done by all the appellees acting together as conspirators, starting with the unlawful dishonor of the check, conversion of the proceeds of the sale of the cattle paid for by the check, the slanderous statements and libelous letters written in continued and close sequence to those acts, culminating in the arrest, indictment, and prosecution of appellant for the purpose of protecting the bank and all appellees in the unlawful conversion of the funds deposited under the terms of the contract breached.

█ The trial court also erred in sustaining the several special exceptions of appellees, striking out that portion of appellant's petition wherein he alleged the manner in which appellees handled the item of $400 deposited in the bank as proceeds of the sale of the cattle, as not constituting any part of appellant's cause of action. As above pointed out, it was proper for appellant to plead all transactions in connection with or incidental to the breach of the contract as a part of a series of transactions or acts which culminated in the wrongful arrest and prosecution of appellant. If appellant has any cause of action, it grew out of the wrongful dishonor of the check and the conversion of the $400 deposited under the contract, which acts were followed in continued and close sequence by slanderous statements and libels, which culminated in the arrest and prosecution of appellant, for the purpose of protecting appellee bank in its conversion of the deposit.

█ The trial court also erred in sustaining the several special exceptions of appellees, striking out of appellant's petition all specific items, statements, writings, or utterances of appellee bank's officers, and alleged to be slanderous and libelous, upon the ground that said appellee bank officers were not agents or officers of the bank in making such statements or writings; nor were such writings or statements made or written in pursuance of the business of the bank, and in no way binding

upon it. Appellees Richmond and Lacy were the bank's president and cashier, respectively, and were in charge of and managing its entire affairs. They made the contract in suit for the bank; they acted for the bank in breaching this contract; they acted for the bank in converting the $400 deposit; they answered inquiries denying for the bank that appellant had deposited the $400; refused to give any information as to the deposit as agents and officers of the bank, and, in connection with these inquiries, gave slanderous and libelous statements concerning appellant, causing his arrest and prosecution, and all of which was alleged to have been done for the purpose of protecting the appellee bank in its conversion of the deposit. Under these alleged facts the appellee officers of appellee bank must be held to have acted as agents of the bank and within the scope of their authority as agents and officers of the bank. Cumberland State Bank v. Ison, supra; Southwestern Tel. & Tel. Co. v. Long (Tex. Civ. App.) 183 S. W. 421.

■ In this connection we sustain the action of the trial court sustaining special exceptions to the petition, striking out the allegations that appellees, in the presence of many citizens of Brown, Comanche, and Mills counties, unknown to appellant, frequently made slanderous statements of the same tenor and effect as those aforementioned, upon the grounds that such allegations were too indefinite, general, and vague to apprise appellant of the nature of such slanderous statements. Lawless v. Ellis (Tex. Civ. App.) 281 S. W. 1090; Miller v. Dorsey, 149 Mo. App. 24, 129 S. W. 66.

■ The court erred in sustaining the several special exceptions of appellees, striking out of appellant's petition all allegations with reference to appellees causing the arrest and prosecution of appellant for swindling on account of giving Beck the check which appellee bank dishonored, upon the grounds that the allegations were too vague and indefinite, and alleged no facts showing or constituting a conspiracy on the part of appellees, or to show that they caused or joined in causing any malicious prosecution, imprisonment, libel, slander, or any actionable damage to appellant. The pleadings allege all transactions and facts surrounding the giving of the check, the relation of all parties to these transactions; the duty of the bank and its officers to make full disclosure to the payee of the check as to its contract with appellant, and to reveal the fact that appellant had deposited $400 of the proceeds of the sale of Beck's cattle; but that, disregarding these duties and for the purpose of protecting appellee bank in its conversion of the $400, all appellees conspired and acted together and withheld any information to payee which could show appellant not guilty of swindling on account of giving the check, and, in connection with payee's inquiry concerning the deposit of $400, denied same, and advised and counseled payee to prosecute appellant for swindling on account of giving the check, and urged payee to have appellant arrested as a means of collecting the check; thereby purposely setting in operation the machinery of law against appellant and causing his arrest, indictment, and trial upon the charge of swindling on account of giving the check which appellees had wrongfully dishonored. If these facts alleged are proved, they show a conspiracy on the part of appellee bank and its appellee officers to cause the prosecution of appellant for swindling of more than $50, in order to protect appellee bank in its conversion of the $400 deposit, which rightfully belonged to Beck, as payee of the dishonored check.

■ The trial court also erred in sustaining the several special exceptions of appellees, striking out of appellant's petition loss of earning capacity and expenses for defense of himself against the swindling charge as elements of damages arising out of the malicious prosecution for alleged swindling and arising out of the libels and slanders incident thereto, and as destroying appellant's standing and reputation for business integrity in the community. We think it indisputable that impairment and loss of earning capacity occasioned by the malicious prosecution of a man for swindling is a natural and probable consequence of such malicious prosecution, in that such proceeding necessarily implies that a man is unworthy and without business integrity. Davis v. Teague (Tex. Civ. App.) 256 S. W. 957; Mo., etc., Ry. Co. v. Craddock (Tex. Civ. App.) 174 S. W. 965; Equitable Life Assur. Society v. Lester (Tex. Civ. App.) 110 S. W. 499; Gulf, C. & S. F. Ry. Co. v. James, 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743.

Except for the one hereinabove mentioned, we think the trial court erred in sustaining each and all the special exceptions urged by appellees to appellant's petition, and reverse and remand the cause for trial upon the merits.

**Reversed and remanded.**