## DAUGHTRY v. BLANKET STATE BANK et al.

### No. 7847.

Court of Civil Appeals of Texas. Austin.
April 26, 1933.

Rehearing Denied May 17, 1933.

Callaway & Callaway and McGaugh & Darroch, all of Brownwood, for appellant.

Woodruff & Holloway, of Brownwood, for appellees.

BLAIR, Justice.

This is the second appeal of this case. On the former appeal, reported in 41 S.W.(2d) 527, we held that the trial court erred in sustaining certain special exceptions to appellant's pleadings upon the ground of misjoinder of causes of action, and reversed and remanded the cause for trial upon the merits. This appeal is from an instructed verdict at the conclusion of appellant's testimony. We have reached the conclusion that the instructed verdict was correct.

On this appeal appellant contends that his suit is only "for damages for wrongful dishonor of a check," given by him to one Beck

in payment of cattle, "and for malicious prosecution, and slander and libel growing out of such act on the part of the defendant bank and its defendant officers"; and that the evidence was sufficient to require the submission of these causes of action to the jury.

With regard to the action for alleged wrongful dishonor of the check, no damages were alleged or proved as arising from the mere dishonor of the check; but the only damages alleged or attempted to be proved were those resulting from the alleged slanderous and libelous statements made in connection with the dishonor of the check, and the subsequent prosecution of appellant for giving the check in payment of Beck's cattle. We therefore pass to a consideration of the sufficiency of the evidence to establish the actions for slander, libel, and for malicious prosecution.

■ With regard to the cause of action for slanderous statements made in connection with the dishonor of the check given by appellant to Beck in payment for his cattle, we think the trial court correctly sustained the plea of limitation to that cause of action. The evidence showed that prior to the 17th day of November, 1928, Beck made three demands upon appellee bank for payment on the check; that the slanderous statements to the effect that appellant was a financial crook, and had been financially crooked with the bank, were made on those occasions. The suit was not filed until November 27, 1929, which was more than one year after the cause of action for slander had accrued, and such cause of action was therefore unquestionably barred by article 5524, R. S. 1925. Seven One Seven Tire Service v. Firestone Tire & Rubber Co. (Tex. Civ. App.) 288 S. W. 558, 559.

[2] With regard to the action for libel, the evidence is insufficient to sustain such action. The cause of action for libel was predicated upon a letter written by the cashier of appellee bank, with the knowledge and consent of the president; and was in answer to an inquiry of an attorney representing Beck regarding the deposit by appellant of the proceeds of the sale of the cattle. It reads as follows: "Yours of yesterday to hand and in reply to same regarding the deposit you claim that Mr. Daughtry made in our bank will say that he did not deposit $440.00 with us. We did not know anything at all about Mr. Daughtry giving Mr. Beck the check and when we received same it was returned unpaid."

■■ Appellant alleged in this connection that the "full meaning and intent of said letter was as follows: That the plaintiff L. S. Daughtry was a liar and a swindler, and that he had not deposited the proceeds of the sale of said Beck cattle in the sum of $400.00, or substantially that amount in the defendant bank; and that the said appellant had not informed said bank of the purchase of said cattle, and that the plaintiff was a liar, swindler and thief." We recognize that if the letter is ambiguous, it may be added to by allegations of innuendo; but where it on its face is unambiguous, we do not think it can be enlarged by innuendo. The specific inquiry in Beck's attorney's letter to the bank was whether appellant had deposited $440 to the credit of Beck, or as the proceeds of the sale of Beck's cattle. The evidence shows that appellant deposited $400 in cash, and according to appellant's statement that the bank knew that he had purchased Beck's cattle; whereas, the view of the bank was that it asked Daughtry where he got the money, and he told them that it was none of its business. We therefore conclude that the language of the letter is not susceptible of being enlarged by innuendo to the extent that it may be interpreted as branding appellant a liar, swindler, and thief. Enterprise Co. v. Wheat (Tex. Civ. App.) 290 S. W. 212; So. Pub. Co. v. Foster (Tex. Civ. App.) 36 S.W.(2d) 231; Fuson v. Abilene Gas & Electric Co. (Tex. Civ. App.) 219 S. W. 208; Harris v. Santa Fé Townsite Co., 58 Tex. Civ. App. 506, 125 S. W. 77.

■ With regard to the action alleged for bringing about or causing the arrest, imprisonment, and prosecution of appellant on account of the dishonor of his check by appellee bank, we have reached the conclusion that the acts and conduct of appellees are insufficient to sustain same. The gist of an action for malicious prosecution is that the plaintiff has improperly been made the subject of legal process to his damage. The essential element for such an action is a malicious prosecution of some legal proceeding without cause before some tribunal, and that such proceeding results favorably to the plaintiff. The scandal or humiliation, vexation, and expense resulting to a person thus wrongfully prosecuted furnishes the ground upon which an action for malicious prosecution may lie. 5 A. L. R. 1098, and notes and cases cited; Reed v. Lindley (Tex. Civ. App.) 240 S. W. 348.

■ The general rule of law applicable is that actions for malicious prosecution are not favored in the law; or, as expressed in the language of the authorities: "It is frequently said that actions for malicious prosecutions have never been favored in law. The idea may, perhaps, better be expressed by saying that such actions are to be properly guarded and their true principles strictly adhered to * * * the reasons for this must at once be obvious. The purpose of the law is to protect individuals in their just rights." Griswold v. Horne, 19 Ariz. 56, 165 P. 318, 319, L. R. A. 1918A, 862.

■ The general rule as regards the liability of one advising or procuring the insti-

tution of proceedings is that one who procures a third person to institute a malicious prosecution is liable in damages to the party injured to the same extent as if he had instituted proceedings himself. Gordon v. McLearn, 123 Ark. 496, 185 S. W. 803, Ann. Cas. 1918A, 482; 38 C. J. 395; Wheeler v. Nesbitt, 24 How. 544, 16 L. Ed. 765; Genovese v. Harlingen Piggly Wiggly (Tex. Civ. App.) 32 S.W.(2d) 379; Genovese v. Butt (Tex. Com. App.) 48 S.W.(2d) 587.

█ The authorities also hold that from the mere turning down or dishonoring of a check a bank could not reasonably contemplate that an unlawful arrest would result from the error. Western Natl. Bank v. White, 62 Tex. Civ. App. 374, 131 S. W. 828.

[12] Appellant alleged in his pleadings that upon presentment of the check the appellee bank and its officers said to Beck: "Why don't you prosecute him (appellant), then he will pay off. If I were you I would have him arrested, and then you will get your money;" and other statements of the general tenor and effect. Appellant's testimony wholly failed to prove any such statements by appellees. Beck testified: "They never made no such statement to me when me and Mr. Bowman was there, but John was doing the talking to him at the time me and him was together after we had filed a complaint against him that day, but he didn't know it." Beck further testified: "He never did mention prosecuting Mr. Daughtry at all." Beck also testified that even after the bank told him that Daughtry had deposited $400 in the bank which he claimed was the proceeds of the sale of his cattle, he continued to prosecute the case for swindling; and the only evidence of any action on the part of appellees, the bank and its officers, was that they were summoned as witnesses before the grand jury, and gave such testimony as was asked of them concerning the transaction with regard to dishonoring the check; and were also subpoenaed as witnesses to appear at the trial of the case, which was dismissed on motion of the district attorney because of want of sufficient evidence to convict. Appellees did not testify in this case. In 38 C. J. 395, it is stated: "No liability attaches by reason of testifying as a witness for the prosecution, or by reason of the fact that one's name was indorsed on the indictment, or that the defendant went before the grand jury on process of the state, it not appearing that 'he made any effort to procure the indictment." Reed v. Lindley (Tex. Civ. App.) 240 S. W. 348.

The only other evidence bearing upon the issue of whether appellee bank caused the prosecution of appellant for giving the check was that of witness Hester, which testimony was excluded by the trial court; and as to its exclusion appellant assigns error. Witness testified that he had a conversation with John Knutson, a director of appellee bank, with regard to the dishonor of appellant's check, as follows: "Well, now I could be mistaken about the time and all, but it seems to me that they had had Mr. Daughtry indicted down at Goldthwaite or something of the kind and probably it had been dismissed or something. That is my recollection and we were talking about it there. Well, there was general talk over there all of the time about this case. Mr. Knutson said, he spoke something about that he (plaintiff) would have another trial or be indicted or something of the kind. He said something about 'we are going to send him to the pen', and I said, well, I don't see how they could send him to the pen for giving an overdraft or check, that is where there was an understanding."

█ It affirmatively appears that this statement was not made in connection with the bank's business. It took place at a filling station, away from the bank, and was merely a statement of an individual director of the bank. The evidence was not admissible under the rule announced in Cannel Coal Co. v. Luna (Tex. Civ. App.) 144 S. W. 721, 722, as follows: "A corporation is not bound by the declarations or admissions of its individual directors, officers, or agents outside the scope of their agency or authority, nor when not made in connection with the performance of their duties. In order, therefore, to bind a corporation by the declarations or admissions of an agent, it must not only appear that he was acting within the scope of his authority, but that they were made in the prosecution of, or in connection with, the performance of his duties. Speaking on this subject, it was said by the Supreme Court of Minnesota in Browning v. Hinkle, 48 Minn. 544, 51 N. W. 605, 31 Am. St. Rep. 691: 'The mere fact that one is a director, president, secretary, or other officer of a corporation does not make all his acts or declarations, even though relating to the affairs of the corporation, binding upon the latter. Such persons are mere agents, and their declarations are binding upon the corporation only when made in the course of the performance of their duties as agents, so that the declarations constitute a part of their conduct as agents, a part of the res gestæ.' "

The judgment of the trial court will be affirmed.

**Affirmed.**