**MORAN UTILITIES COMPANY, Appellant,**

v.

**J. W. CHILDS, Appellee.**

**No. 6774.**

Court of Civil Appeals of Texas.

Beaumont.

June 10, 1965.

Rehearing Denied June 30, 1965.

Darden, Fowler, Creighton, Conroe, for appellant.

J. Robert Liles, George W. Morris, Conroe, Will Gray, Houston, for appellee.

PARKER, Justice.

The opinion and judgment rendered in this cause on the 20th of May, 1965, are withdrawn and this opinion will be substituted for the original. Judgment is rendered as hereinafter set forth.

This is a malicious prosecution case tried before a jury. Appellee J. W. Childs recovered judgment against Moran Utilities Company for $5500.00 upon allegations that the appellant had maliciously prosecuted him for the offense of stealing natural gas. Hereinafter J. W. Childs will be called appellee and Moran Utilities Company will be called appellant.

At the time the complaint was filed with the Justice of the Peace, George Zincke was acting in the scope of his employment by appellant. Appellee was found not guilty when tried in the Justice Court. In answer to special issues the jury found from a preponderance of the evidence that George Zincke as agent of the appellant acted without probable cause and with malice in filing the complaint in question. Appellant's first eight points of error attack the findings of the jury that Moran Utilities Company acted without probable cause in the filing of the complaint in question and acted with malice in filing the complaint in question. The "no evidence" points pertinent thereto will be considered.

■ The burden of proof was upon appellee to show by a preponderance of the evidence that there was no probable cause on the part of appellant Moran Utilities Company to believe that appellee was guilty of stealing gas. The undisputed evidence bearing on probable cause is as follows: Moran Utilities Company is engaged in the business of furnishing natural gas to consumers in Conroe and Montgomery County. For several years it had unauthorized connections to its gas lines with its gas being used without payment. This created a potential hazard to the safety of people as well as to property. George Zincke was the manager of Moran Utilities Company. Jimmy Stewart was an employee of the utility company. On the afternoon of November 23, 1962, Stewart and a deputy sheriff, Bailey, were searching for another man they were informed was employed at appellee's garage. Mr. Childs owned and operated this garage. It was a small, brick newly constructed building located on Highway 105. It is undisputed that prior to that day Stewart had never known Childs. Prior to that day Mr. Zincke did not know Childs. Stewart's duties required him to make inspections of unauthorized use of gas. Since this garage was a new establishment, Stewart went around to the back to see whether or not this place of business had a gas meter and a gas connection. Meanwhile, the deputy sheriff sought information about the other man. In going to the rear of the building, Stewart saw a ½ inch pipe going out of the side of the building and into the ground. He did not see a gas meter. He went around to the inside of the garage to see what the pipe was connected to. There he found the pipe coming out of the wall connected to a rubber hose connected to a pipe fitting with a stop cock ending up inside a stove made out of a metal barrel. The stop cock was outside this stove where it could be turned off and on without reaching inside the barrel. He recognized this as a homemade heater. He turned the stop cock to the "on" position and heard the sound of hissing gas pouring out of the line. Stewart was familiar with the smell of the odorizer his company used with natural gas. Also, he was familiar with the smell of butane. From the distinguishing odor of the escaping gas he concluded it was natural gas with the odorizer used by appellant. Then Stewart went to his car, got a sharpshooter shovel and returned to the rear of the building where the pipe came out of the wall. From such place he partially traced the line, to determine its origin of gas supply, by sticking the sharpshooter at intervals and deep enough to make contact with the metal of a buried line. He located a riser at the Moran line. He saw a slight depression of the ground he considered to be a ditch which had been recently dug and filled in leading from such riser to the building containing the heater and along the place where he had partially tapped out a line. Childs walked up to him and in response to a statement made by Stewart that he was using natural gas from Moran's line without authority, Childs testified that he did not reply. Childs admitted that he did not state to Stewart that he was using butane gas in the stove from a tank owned by him. Childs admitted he did not try to show Stewart he was using butane gas but he, Childs, simply remained silent. The con-

nection to the Moran line Stewart so found was 50 or 60 feet from the rear of the building where the ½ inch line came out of the ground and through the side of the building to the heater. Stewart saw no butane tank of any kind around the premises. Stewart then called Mr. George Zincke, the manager of Moran Utilities Company, who came down to the garage, arriving around 2:00 in the afternoon. Upon arriving at the garage, Stewart pointed out to Zincke the homemade stove, the location of the line which he had traced out by tapping, the old service riser at the Moran line, the depression of the ground above mentioned, and the marks of the sharpshooter where he had stuck it into the ground to touch the line. After observing these, Zincke went inside the garage, turned the stop cock on and heard the sound indicating pressure and smelled the gas, which he identified as being natural gas with the odorizer furnished by his company. Zincke then called a service man employed by appellant who came to the scene, dug up the connection to the Moran line, cut it loose and capped it. After the connection had been capped, to make certain that this was the source of the gas coming into the heater inside the garage, Zincke then went back inside the garage building, tried the gas jet on the stove and in turning it on found that it did not contain gas and that the disconnecting of the line at the riser from Moran's line cut off the supply of the gas to the heater. Zincke observed that there was no other connection to the stove other than the line coming through the wall.

█ The question of probable cause does not depend on the guilt or innocence of the appellee but on whether Zincke as the agent of appellant had reasonable grounds from the facts known to him at the time he filed the complaint against appellee to believe and did believe that the accused was guilty of stealing natural gas. Taking the evidence in the most favorable light to support the judgment of the trial court, we find no evidence establishing want of probable cause on the part of appellant in filing the complaint.

Zincke, on the same day, promptly filed a complaint against appellee after making the investigation as above set forth. On that same day after the complaint was filed, appellee made a $12.00 deposit with appellant in applying for a meter and connection for gas at his garage. We conclude that such evidence shows that the facts as they appeared to Mr. Zincke at the time he filed such complaint were such as to constitute reasonable grounds from the facts then known to him to believe, not only as a reasonably prudent person but as a cautious person, that the accused appellee was guilty of stealing gas. There is no probative evidence that appellant acted without probable cause in the filing of the complaint against appellee. Under the undisputed evidence appellant acted with probable cause in so doing. Montgomery Ward & Co. v. Kirkland, 225 S.W.2d 906 (Tex.Civ.App.1949, wr. ref. n. r. e.) and decisions cited therein.

█ On the question of malice, we find no evidence of actual malice. Agents of appellant involved had never known appellee before this occasion. There is no evidence of a motive for malice. It has been said that malice need not be proven by direct evidence, but like any other fact may be inferred from the circumstances or may be inferred by the jury from want of probable cause. Since there was probable cause on the part of appellant to believe that appellee was guilty of stealing gas, no inference of malice obtains. To infer malice on the part of appellant when no agent of appellant knew appellee before the day the complaint was filed is entirely without logic. There is no evidence of probative force to support the finding of the jury that appellant acted with malice in filing the complaint against appellee. The fact that appellee was acquitted on the criminal trial does not tend to prove malice or want of probable cause. Bekkeland v. Lyons, 96 Tex. 255, 72 S.W. 56, 64 L.R.A. 474 (S.Ct. 1903, Op. by Gaines, C.J.). The undisputed

evidence establishes that appellant acted without malice in filing the criminal complaint against appellee.

Appellant's points 1, 4, 5 and 8 germane to want of probable cause and lack of malice are sustained and the judgment of the trial court is accordingly reversed.

■ It appearing that this case has been fully developed, including evidence bearing upon want of probable cause and malice on the part of appellant in filing the complaint against appellee, this court renders the judgment that should have been rendered in the court below that appellee take nothing as against appellant and pay the costs of this court and the court below. Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 49, 150 A.L.R. 1369.

Reversed and rendered.