James Robert PARKER, Appellant,

v.

**DALLAS HUNTING AND FISHING CLUB, Appellee.**

No. 17530.

Court of Civil Appeals of Texas, Dallas.

Jan. 22, 1971.

Alvin Boyd, Boyd & Killough, Dallas, for appellant.

Leo J. Hoffman, H. Norman Kinzy, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

A summary judgment was rendered that James Robert Parker take nothing by his suit against Dallas Hunting and Fishing Club for damages arising from alleged malicious prosecution for criminal trespass. Appellant attacks the validity of the summary judgment in two points of error wherein he contends (1) that the record does not affirmatively reveal the nonexistence of issuable facts and (2) that the order of the trial court is a denial of due process under the Constitutions of Texas and the United States. Answering these points appellee primarily contends that the judgment of the trial court was correct since the summary judgment evidence is conclusive that there is no genuine issue of material fact as to absence of one or more of the essential elements of malicious prosecution and therefore he was entitled to judgment as a matter of law.

In determining the issues presented we are guided by the rules relating to judicial review of summary judgments as announced by our Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (1965) and also Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.Sup.1970) wherein the court stated that the question to be decided on appeal in such cases is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action.

With these fundamental legal principles in mind we have carefully examined the summary judgment evidence brought forward in this record.* From this evidence we summarize the following material facts.

Dallas Hunting and Fishing Club, Inc. (hereinafter called Club) was incorporated in 1885 as a non-profit corporation, for the purpose of maintaining a hunting and fishing club for the benefit and recreation of its members. The Club has existed since that time on land, consisting of about 900 acres, located in the southeast part of Dallas County. This property is completely enclosed by a substantial fence. The ownership of said land in fee simple has been claimed for many years by the Club, without contest, and in peaceable possession. The land is located adjacent to the Trinity River and has two lakes located thereon. The two lakes, known as the "Upper" and "Lower" are separated from each other by a dam through which there is a pipe, or flume, which can be opened or closed at the Club's discretion, so as to regulate the level of the two lakes. The two lakes are formed by a natural depression in the "bottom lands" alongside the Trinity River and the Club has deepened the lakes to some extent through the years by building levees and dams on the lake shores. The water in the lakes is replen-

---

* The judgment recites that the court considered the pleadings, the deposition of plaintiff, as well as the affidavits on file. However, the deposition of the plaintiff Parker was not brought forward as a part of the record before this court.

ished during periods of heavy rain by the natural movement of surplus waters toward the bottom lands in which the lakes are located; by the occasional overflow of the Trinity River, which backs up into the lakes; and by some overflow coming out of Prairie Creek. Prairie Creek flows southward and just to the north of Upper Lake on the property of the Club. Dowdy Ferry Road, a public way, is adjacent to the Club property.

During the early part of 1966 numerous persons, not members of the Club, began to enter onto and trespass upon the land owned by the Club for the purpose of fishing in Club waters. This situation progressed, especially near the intersection of Dowdy Ferry Road and Merlin Road, which intersection is adjacent to an arm or channel of the Upper Lake in which water stands after heavy rains. Inasmuch as some of these fishermen were cutting fences belonging to the Club and catching fish from its lake, Mr. Jack Glascock, Club manager and caretaker, consulted with Mr. John Erhard, attorney at law and Club president, and determined, upon Mr. Erhard's advice, to file criminal trespass charges against such persons. On the occasion of each event made the subject of a trespass action against appellant by appellee, and mentioned and complained of in appellant's second amended petition, and on several other occasions not mentioned in the petition, appellant entered upon such enclosed land owned and possessed by the appellee Club for the purpose of catching or attempting to catch fish from waters in an arm or channel of appellee's Upper Lake. In some of the instances involved, appellant entered appellee's land by casting his fishing lines and equipment over or through appellee's fence. In other instances, appellant physically entered appellee's enclosed land by going through the fence. In no case involved did appellant seek or receive any consent to his entry from appellee or from any person in charge of appellee's property. According to Glascock appellant Parker just happened to be in one of the groups of people against

whom trespass charges were filed early in 1966. He did not know Parker at that time and had never heard of him. He appeared in the justice of the peace court and testified as a complaining witness against a number of trespassers, including Parker. Parker returned to the Club property and fished again a number of times and Glascock gradually became acquainted with him in a casual way.

Glascock said that after he reported the repeated trespasses by various people to Mr. Erhard and after Mr. Erhard had investigated the matter the Dallas County Sheriff's Office was called and a deputy sheriff went out. This officer issued tickets for trespassing to various persons found fishing in the waters within the Club's fence and Parker was one of them. Glascock said that he filed complaints to prevent invasion of the Club's property by a large number of trespassers, including Parker.

As a result of the various trials for trespass five of the actions alleged by appellant against appellee were dismissed or quashed or resulted in acquittals of appellant. Two of said actions resulted in convictions of the appellant following a jury trial. Appeal of one conviction of appellant is pending.

Appellant said that he had talked to the game and fish warden about his right to fish in Prairie Creek while standing on Merlin Road and that the said warden gave him a magazine article which contained a copy of the Attorney General's opinion saying that he had a right to fish in said stream if it was more than 30 feet in width and therefore a navigable stream. He said he told Glascock that since Prairie Creek had an average width of more than 30 feet and was, therefore, navigable, he as a member of the public had a right to occupy the bed of the stream or to stand on said road and fish. He said that after he gave notice to Glascock of his right to occupy the property Glascock made several more complaints and he was arrested and charged with criminal offense of tres-

pass. Parker agreed that the Club's agents were justified in taking whatever steps that were necessary to prevent trespass upon the Club's property but that such action taken by the Club was done with malice toward him and for the purpose of harassing and prosecuting him without just cause.

Actions for malicious prosecution, because of their inherent characteristics, have never been favored in law. In the early case of Sebastian v. Cheney, 86 Tex. 497, 25 S.W. 691 (1894), Justice Brown, speaking for the Supreme Court, said that while it is important that every citizen should be protected against malicious prosecutions, it is equally important that crimes should be punished in order that the law-abiding citizen may be secure in life, liberty and property. "To make the citizen liable to be mulcted in damages for an honest discharge of duty, is to give immunity to crime, and to weaken the restraining power of the criminal law, thereby endangering the security of law abiding people."

The disfavor with which the action is looked upon by the law is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff since public policy favors the exposure of crime which a recovery against the prosecutor obviously tends to discourage. Reed v. Lindley, 240 S.W. 348 (Tex.Civ.App., Fort Worth 1922, no writ); J. C. Penney Co. v. Gilford, 422 S.W.2d 25 (Tex.Civ.App., Houston (1) 1967, writ ref'd n. r. e.); Yianitsas v. Mercantile Nat. Bank at Dallas, 410 S.W. 2d 848 (Tex.Civ.App., Dallas 1967, no writ); 18 R.C.L. 11, § 2; 37 Tex.Jur.2d § 2, pp. 518–519.

■ While the law will not withhold a remedy to one who has been maliciously prosecuted without probable cause the public policy announced above requires and demands that the rules governing such action be strictly adhered to. Reed v. Lindley, 240 S.W. 348 (Tex.Civ.App., Fort Worth 1922, no writ); Pendleton v. Burkhalter, 432 S.W.2d 724 (Tex.Civ.App., Houston (1) 1968, writ ref'd n. r. e.); 37 Tex.Jur.2d § 2, p. 519.

■ In order to maintain an action for malicious prosecution the law casts upon the complaining party the affirmative burden of proving each of the following essential elements of the action: (1) the commencement of a criminal prosecution against plaintiff; (2) which has been caused by the defendant or through defendant's aid or cooperation; (3) which terminated in favor of the plaintiff by acquittal; (4) that plaintiff was innocent or not guilty of the charge against him; (5) that there was no probable cause for such proceeding; (6) that it was done with malice; and (7) which resulted in damages to plaintiff. Reed v. Lindley, 240 S.W. 348 (Tex.Civ.App., Fort Worth 1922, no writ); Flowers v. Central Power & Light Co., 314 S.W.2d 373 (Tex.Civ.App., Waco 1958, writ ref'd n. r. e.); Yiamitsas v. Mercantile Nat. Bank at Dallas, 410 S.W.2d 848 (Tex.Civ.App., Dallas 1967, no writ).

The elements of absence of probable cause and the existence of malice are regarded in law as being of extreme importance to the maintaining of the action. As early as 1885 our Supreme Court adopted an opinion by the Commission of Appeals in Ramsey v. Arrott, 64 Tex. 320, in which it was said that to recover in such an action there must be a want of probable cause concurring with the malice of the prosecutor and neither alone is sufficient. Thus it has been said that a defendant in a malicious prosecution action is not liable where there was no probable cause if he was not actuated by malice, or, though he was actuated by malice, if he had probable cause. 37 Tex.Jur.2d, § 16, pp. 537–538.

■ In Ramsey v. Arrott the court defined probable cause as: "The existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the pros-

ecutor, that the person charged was guilty of the crime for which he was prosecuted." The test of the definition must be applied to the circumstances as they existed at the time when the prosecution began. The question of probable cause does not depend upon the guilt or innocence of the defendant but on whether the prosecutor had reasonable grounds, from the facts known to him at the time, to believe that the accused was guilty. Haldeman v. Chambers, 19 Tex. 1 (1856); McManus v. Wallis, 52 Tex. 534 (1880); Moran Utilities Co. v. Childs, 392 S.W.2d 536 (Tex.Civ.App., Beaumont 1965, writ ref'd n. r. e.); 37 Tex.Jur.2d, § 17, p. 539.

■ Again, in Ramsey v. Arrott, the court declared that ordinarily probable cause is a question of law. This is especially so when the facts are not contested and there is no conflict in the evidence directed to that issue. Reed v. Lindley, 240 S.W. 348 (Tex.Civ.App., Fort Worth 1922, no writ); Carswell v. Southwestern Bell Telephone Co., 449 S.W.2d 805 (Tex.Civ.App., Houston (1) 1969, no writ).

■ The want of probable cause can never be inferred from proof of malice. Biering v. First National Bank, 69 Tex. 599, 7 S.W. 90 (1888); Griffin v. Chubb, 7 Tex. 603 (1852); 37 Tex.Jur.2d, § 19, p. 540.

■ With these well established legal guidelines in mind, we have carefully reviewed the entire summary judgment evidence presented by this record and have concluded that appellee has been successful in demonstrating the existence of probable cause for the institution of the criminal proceedings against appellant, as a matter of law. The record is such that reasonable minds could not differ that when appellee caused the institution of the criminal proceedings against appellant it did so in the light of existing facts and circumstances as would certainly excite belief in a reasonable mind that the appellant was guilty

of the crime for which he was being prosecuted. In attempting to turn back the host of trespassers, including appellant, appellee was doing that which an ordinarily prudent owner of property would have done under the situation confronting it. There had been no decision by any court or any governmental agency as to the public nature or navigability of Prairie Creek or any stream or water of any kind within the area enclosed by the appellee's fence. Before instituting the various prosecutions appellee, through its manager, sought the advice and counsel of an attorney at law who made due investigation and advised the action to be taken. At that time Art. 1377b of the Vernon's Ann.Texas Penal Code expressly prohibited the trespasses admittedly made by appellant and many others on the property of appellee. Appellant's contention concerning his claim of navigability of the waters in question is not supported by competent summary judgment evidence.

■ Nor is the summary judgment evidence to the effect that appellant was acquitted in some of the prosecutions instituted against him by appellee any evidence of want of probable cause on the part of appellee in bringing the actions. In Bekkeland v. Lyons, 96 Tex. 255, 72 S.W. 56 (1903), Chief Justice Gaines definitely stated the law in Texas to be that acquittal of the plaintiff in a criminal charge is not evidence tending to show want of probable cause in an action for malicious prosecution. See also Mosley v. Harkins, 147 S.W.2d 309 (Tex.Civ.App., Amarillo 1941); 59 A.L.R.2d 1413; and Moran Utilities Co. v. Childs, 392 S.W.2d 536 (Tex.Civ. App., Beaumont 1965, writ ref'd n. r. e.).

While the trial court's judgment may be affirmed based upon our holding of probable cause, as a matter of law, we also agree with appellee that the nonexistence of the essential element of malice is also established in this record as a matter of law. Our Supreme Court in Ramsey v. Arrott,

discussed above, defined legal malice as being any unlawful act, done willfully and purposely, to the injury of another. See also 37 Tex.Jur.2d, § 12, p. 533. As we pointed out in a similar case, Yianitsas v. Mercantile Nat. Bank at Dallas, 410 S.W. 2d 848 (Tex.Civ.App., Dallas 1967, no writ), the undisputed evidence in this record before us demonstrates clearly that appellee Club was not actuated by malice or any other "sinister" motive in doing what it did. There is no evidence of ill will towards appellant. Appellee did not even know appellant at the beginning of the mass prosecutions for trespass. While it has been said that the existence of malice may be implied from want of probable cause the record demonstrates probable cause, as a matter of law, and hence no inference of malice may be obtained. Moreover, the act done by appellee in instituting the various prosecutions is not shown to be unlawful or actuated by any ill feeling or wrongful design on the part of appellee toward appellant. Since malice and want of probable cause must concur before a recovery can be had the absence of these essential elements justifies the judgment of the trial court in granting summary judgment for appellee.

Appellant's Point 1 is overruled.

Appellant's Point 2, in which he contends that he had been denied due process of law is likewise without merit and is overruled. Appellant, under this point, candidly concedes that the summary judgment rule, when properly applied, does not deprive a litigant of due process of law under either the Constitution of the State of Texas or of the United States. We think that the record in this case clearly demonstrates that the trial court correctly implemented the salutory provisions of Rule 166–A, Vernon's Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.