[875] Garwood

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-8117
_____


GLORIA CAMPBELL,

                              Plaintiff-Appellant,

                    versus

CITY OF SAN ANTONIO, ET AL.,

                              Defendants-Appellees.

CITY OF SAN ANTONIO & GEORGE R. VIDAL,
Individually and in His Official Capacity
as Detective with the San Antonio Police
Department,

                              Defendants-Appellees.

_____

Appeal from the United States District Court for the
              Western District of Texas
_____

(January 19, 1995)


Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and HEAD,[*]
District Judge.

GARWOOD, Circuit Judge:

     Plaintiff-appellant Gloria Campbell (Campbell) appeals the

dismissal of her federal civil rights and pendent state law claims,

in which she sought damages for injuries allegedly caused by her

_____

[*]    District Judge of the Southern District of Texas, sitting by
designation.

arrest for delivery of crack cocaine.  We affirm.

## Facts and Proceedings Below

On April 13, 1990, defendant George R. Vidal (Vidal), a detective with the San Antonio Police Department (SAPD), bought a small amount of crack cocaine from a woman named Gloria Smothers. In August 1990, Vidal, using SAPD identification equipment and procedures, concluded that Gloria Smothers was actually plaintiff Gloria Jean Campbell, whose maiden name was Smotherman.  On September 4, 1990, Vidal identified Campbell as Gloria Smothers in a photographic lineup, using Campbell's Texas driver's license photograph.  Although not specifically alleged in the complaint, Campbell asserted at oral argument that Vidal set forth his conclusions in a report furnished to the local district attorney's office, as a result of which Campbell was indicted by the grand jury for the April 13, 1990, incident.

Following the return of the grand jury indictment, officers of the SAPD arrested Campbell in February 1991 on the charge of delivery of less than twenty-eight ounces of crack cocaine.  It is not alleged that Vidal was one of the arresting officers.  Campbell alleges that she was released from the Bexar County Jail later that day on $15,000 bond, that she was arraigned in state district court on March 25, 1991, and that in July 1991, after several court appearances and a voluntary lie detector test, the charges against her were dismissed due to insufficient evidence.

On April 29, 1992, Campbell filed this suit in Texas state court seeking damages for alleged constitutional violations and negligence on the part of the defendants leading to and arising out

2

of her arrest for delivery of crack cocaine. Named as defendants were the City of San Antonio, Texas (the City); Bexar County, Texas; and Harlon Copeland, in his official capacity as Sheriff of Bexar County. The defendants removed the lawsuit to the district court below on the strength of Campbell's federal civil rights claims brought pursuant to 42 U.S.C. § 1983. Thereafter, in October 1992, Campbell amended her complaint to include claims against Vidal, individually and in his official capacity as a detective with the SAPD. Defendants Bexar County and Sheriff Copeland moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. Vidal and the City subsequently filed a motion to dismiss pursuant to Rule 12(b)(6). Campbell responded to both motions. The district court granted the 12(b)(6) motions and dismissed the action.

Campbell timely appealed this ruling.[1]

### Discussion

In dismissing the claims against Vidal and the City, the district court ruled that (1) Vidal, individually, was entitled to qualified immunity on the civil rights claims for the mistaken arrest of Campbell; (2) Campbell failed to allege specific facts demonstrating an official policy or custom as a basis for liability of the City and Vidal, in his official capacity, on the civil rights claims; and (3) Campbell's state law negligence claims

---

[1] Campbell has not appealed the dismissal of her claims against Bexar County or Harlon Copeland; those defendants are not party to this appeal.

3

against Vidal and the City were not cognizable under the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001, *et seq.* (Vernon 1986).

We review the district court's order of dismissal pursuant to Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Campbell. *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 (5th Cir. 1990); *Heaney v. United States Veterans Admin.*, 756 F.2d 1215, 1217 (5th Cir. 1985). Our review is narrow: we will not uphold the dismissal "`unless it appears beyond doubt that [Campbell] can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Heaney*, 756 F.2d at 1217 (quoting *Conley v. Gibson*, 78 S.Ct. 99, 101-02 (1957)). However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 3 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 156-159 (footnote omitted). "[A] statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient. *Id*. at 163 (footnote omitted). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5] at 12-91 (footnote omitted). The court is not required to "conjure up unpled allegations or construe elaborately arcane scripts to" save a complaint. *Gooley v. Mobil Oil Corp*, 851 F.2d 513, 514 (1st Cir.

4

1988).   Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

I.   Federal Constitutional Violations

A.   Claims Against Vidal Individually

In considering Campbell's section 1983 claims against Vidal, our first inquiry is whether Campbell was deprived of a right secured by the Constitution.  *Baker v. McCollan*, 99 S.Ct. 2689, 2692 (1979).  All injuries complained of in Campbell's complaint stem from her arrest for delivery of crack cocaine.  Campbell does not, however, challenge her arrest on appeal.[2]  Indeed, even before the district court, Campbell agreed that she had been arrested pursuant to a valid warrant.[3]  *See Baker* at 2694-95; *Simons v. Clemons*, 752 F.2d 1053, 1055 (5th Cir. 1985) (plaintiff asserted no deprivation of constitutional right where she was arrested on a facially valid warrant because of an honest mistake).

Campbell has conceded that she was named in the arrest warrant and that it was valid.[4]  She has also conceded that the warrant was

_____

[2]   In her brief on appeal, Campbell states:  "It is not the actual execution of the warrant of which Plaintiff complains but the procedure which was utilized by Detective Vidal and sanctioned by the City of San Antonio."

[3]   In the Joint Agreed Pre-Trial Order, Campbell conceded that she "was arrested pursuant to a valid warrant."  She also agreed that Vidal was acting in the course and scope of his employment as a detective with the SAPD at all time material to the lawsuit, and that he acted under the color of law in his discretionary authority as a SAPD detective.

[4]   This concession distinguishes *Malley v. Biggs*, 106 S.Ct. 1092 (1986).  In *Malley*, the warrant was invalid because of the

5

based on a grand jury indictment, which itself establishes probable cause. "A warrant of arrest can be based upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged." *Giordenello v. United States*, 78 S.Ct. 1245, 1250 (1958). *See also Gerstein v. Pugh*, 95 S.Ct. 854, 865 n.19 (1975) (indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry"); *Ex parte United States*, 53 S.Ct. 129, 131 (1932); *Beavers v. Henkel*, 24 S.Ct. 605, 608 (1904).

Because Campbell does not pursue a Fourth Amendment claim on appeal, the only facts before us which may form the basis of the alleged constitutional violation, therefore, are Vidal's actions in identifying Campbell as the woman known as Gloria Smothers five months after he purchased the crack cocaine.[5] We must determine

---

lack of probable cause, and the resulting illegal arrest was in violation of the Fourth Amendment. Here, the warrant was valid; Campbell's arrest was thus also valid, and no Fourth Amendment violation occurred.

[5] That this mistaken conclusion is the focus of our attention is evident from Campbell's description of the facts underlying her claim in her amended complaint:

"On or about August 20, 1990, Defendant Vidal, using San Antonio Police Department identification equipment and procedures . . . mistakenly concluded that the true identity of Gloria Smothers [who had sold him the crack cocaine] was Plaintiff, Gloria Jean Campbell whose maiden name was Smotherman.

"On or about September 4, 1990, Defendant George Vidal identified a Texas Drivers [sic] License photograph of Plaintiff as the person who had sold him `crack cocaine' on April 13, 1990, nearly five months

6

whether her claims based upon Vidal's mistaken identification amount to a violation of the Fourteenth Amendment Due Process Clause. The Supreme Court has observed that, "[u]nlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Manson v. Brathwaite*, 97 S.Ct. 2243, 2252

---

before.

"On or about February 26, 1991, approximately 12:30 p.m., the Plaintiff was arrested by members of the San Antonio Police Department. Plaintiff was incarcerated in the Bexar County Jail and charged with the offense of Delivery of Cocaine under 28 ounces."

In the portion of the amended complaint detailing the basis for her lawsuit, Campbell does not state what Vidal actually did, other than in some manner identify her to someone as the suspect, to trigger her arrest:

"The occurrence made the basis of this action was a direct and proximate result of the negligence of the City of San Antonio, Bexar County, their agents, servants, and officers, and Defendant Vidal in the following particulars:

"(a) In failing to properly supervise or carryout [sic] sufficient identification procedures on or about February 26, 1991 in order to prevent Plaintiff's injuries[;]

"(b) In failing to properly correct mistakes in identification of the Plaintiff in order to prevent the Plaintiff's injuries;

"(c) In failing to maintain proper record keeping as to the Plaintiff in order to prevent the Plaintiff's injuries;

"(d) In failing to properly supervise or use tangible implements of identification and record keeping which were under its care, custody, or control[;]

"(e) In failing to timely attempt an identification of a suspect rather than wait approximately five months."

7

n.13 (1977). Campbell has not asserted that the procedures used by Vidal to identify her were suggestive, nor that Vidal acted intentionally in misidentifying her as the woman who had sold him the crack cocaine. Her sole allegation is that her injuries were caused by Vidal's negligence in arriving at, and acting in some unspecified way upon, the mistaken identification. The Supreme Court has held that the negligent act of a state official which results in unintended harm to life, liberty, or property, does not implicate the Due Process Clause. *Daniels v. Williams*, 106 S.Ct. 662, 663 (1986). *See also Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989) (arresting officers not liable for mistaken arrest where, as a result of negligence, civil rights plaintiff's name was submitted to grand jury instead of that of suspect); *Simmons v. McElveen*, 846 F.2d 337 (5th Cir. 1988) (negligent detention following valid arrest not actionable under section 1983, citing *Daniels*).

Campbell had no constitutional right to be protected from Vidal's merely negligent conclusion that she was the suspect who had sold him the crack cocaine.[6] The district court correctly ruled that she did not assert a section 1983 claim against Vidal,

---

[6] Further, it is plain that no such right was clearly established at the time. Hence, even assuming, *arguendo*, that Campbell has shown the violation of a constitutionally protected right, she has not established a right to damages on her section 1983 claims against Vidal. Vidal is protected from liability by qualified immunity: Campbell has conceded that Vidal was acting within the scope of his employment with the SAPD. "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

8

individually, upon which relief could be granted.

B.    Claims against the City

A municipality may be held liable under section 1983 for a deprivation of rights protected by the Constitution or federal law only if that deprivation is inflicted pursuant to an official, municipal policy.  Such a policy may include "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 338, 841 (5th Cir. 1984).

The crux of Campbell's complaint is that Vidal incorrectly and negligently concluded that she was Gloria Smothers.  The claims against the City rest on her allegations that the City negligently failed to correct the mistaken identification or to prevent such a mistake from occurring in the first place.  Campbell has not asserted any facts, however, indicating that her alleged deprivation of constitutionally protected rights was the result of an official policy or custom.  Campbell describes only this single incident in which Vidal was mistaken in his identification of her as Smothers.  "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal section 1983 liability.  *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 105 S.Ct. 3476 (1985).  *See also Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986); *Lopez v. Houston ISD*, 817 F.2d 351, 353-54 (5th Cir. 1987); *Hamilton v. Rodgers*, 791 F.2d 439, 443-44 (5th Cir.

9

1986). The facts alleged in the amended complaint simply do not tend to show, nor does the complaint assert, that the City had any such policy or custom that resulted in infringement of Campbell's constitutional rights or that any such policy or custom of the City was adopted or continued by its policymakers in "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 109 S.Ct. 1197, 1206 (1989).

The district court correctly dismissed Campbell's section 1983 claims against the City.

## II. State Law Negligence Claims

### A. Texas Tort Claims Act

The district court dismissed Campbell's state law negligence claims, construing them as claims for false arrest or false imprisonment. Neither claim falls within a statutory waiver of immunity under the Texas Tort Claims Act (the Act).[7] In fact, section 101.057(2) of the Act proscribes liability for claims arising out of "false imprisonment, or any other intentional tort."[8]

---

[7] The Act governs the instances in which governmental units of the state, including cities, may, or may not, be held liable to private litigants. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.055, 101.057.

[8] The heart of Campbell's allegations of negligent use of tangible personal property does indeed seem merely a part of a larger claim for false arrest or false imprisonment. An action for either of these intentional torts is barred by section 101.057(2) of the Act (barring claims "arising out of assault, battery, false imprisonment, or any other intentional tort"). *See City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. App.SQSan Antonio 1990, writ denied). Campbell's claim for damages centers around the arrest itself and the results thereof. She does not rely on her allegations of the negligent use of the identification materials as a source of damage by itself, but

10

Campbell argues that her claim was not for false arrest (or
"other intentional tort"), but rather for the negligent use of
tangible personal property, *i.e.*, that the proximate and direct
cause of her mistaken arrest and subsequent injuries was the
negligent use of the City's identification materials and
procedures, including the photographic lineup.[9] Section 101.021 of
the Act provides the instances in which a governmental unit of the
State of Texas may be liable:

"A governmental unit in the state is liable for:

---

only as it led to her arrest, detention, and prosecution.  It
would appear, therefore, that if Campbell's allegations of
negligent misidentification are only background and support for a
claim for false arrest, detention, or prosecution, these claims
should also be barred.

A Texas intermediate appellate court has stated, however,
that immunity from an action for false arrest or false
imprisonment does not extend to claims for simple negligence
arising from the same set of facts.  *Jefferson County v. Sterk*,
830 S.W.2d 260, 261-62 (Tex. App.SQBeaumont 1992, writ denied).
In that case, the plaintiff claimed Jefferson County negligently
caused his false arrest by failing to withdraw an arrest warrant
from its active files after resolution of his probation case.  As
part of this claim, he alleged that the County was liable for the
negligent misuse of the arrest warrant, which he contended to be
tangible personal property within the context of the Act.  The
trial court agreed with him and ruled against the County.  On
appeal, the Beaumont court of appeals rejected the County's claim
that its immunity for false arrest or false imprisonment
precluded its liability for the plaintiff's negligence claim.
*Id*.  Campbell's claims, even if solely for false arrest, are
couched in terms of negligence.  *Sterk* indicates that the
defendants may not rely on their immunity from liability for
intentional false arrest or false imprisonment to avoid liability
for claims of negligent false arrest.  Campbell has alleged only
negligence.

[9]     Campbell alleged in her amended complaint that her damages
were directly and proximately caused by the negligence of the
City and Vidal "[i]n failing to properly supervise *or use*
tangible implements of identification and record keeping which
were under [defendants'] care, custody, or control."  (Emphasis
added.)

11

* * * *

"(2) personal injury and death so caused by a condition *or use of tangible personal or real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (emphasis added).[10]

Campbell relies on a series of cases in which the Texas courts have held that the negligent misuse of medical equipment may provide grounds for a negligence action under section 101.021(2). *See, e.g., Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31-32 (Tex. 1983) (misuse of electrocardiogram provided grounds for liability of hospital); *Texas Dep't of Mental Health and Mental Retardation v. Petty*, 848 S.W.2d 680, 684 (Tex. 1992) (patient's treatment records were tangible personal property, rendering state liable for negligent misdiagnosis); *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 171 (Tex. 1989) (allegation of liability based on failure to equip epileptic patient with life preserver).

The cases dealing with a doctor's negligent treatment of a patient may not be analogous to the present case, because a doctor may be liable under the common law for negligently rendering medical treatment. In any event, the Texas Supreme Court recently has seemed to disagree with any broad reading of its earlier decisions in the medical context. In *Univ. of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175 (Tex. 1994), the court held that information, which may or may not be recorded in medical

---

[10] The Act was amended in 1987 to provide for municipal liability for damages arising from certain governmental functions, including police and fire protection and control. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1) (Vernon 1994 Supp.). Campbell has not asserted this section of the Act as a ground for liability.

12

records, is not tangible personal property within the meaning of section 101.021(2) of the Act. *Id*. at 179. "Information then, is intangible; the fact that information is recorded in writing does not render the information tangible property." *Id*. The court distinguished *Salcedo* on the ground that in that case the plaintiff alleged misuse of the electrocardiogram, a piece of hospital equipment. *Id*. at 178. *York* was recently reaffirmed by the Texas Supreme Court in *Kassen v. Hatley*, No. D-4248, November 10, 1994, 1994 WL 625998(Tex.). There, citing *York*, the Court stated that "information in medical records is not tangible personal property within the meaning of the Texas Tort Claims Act" and that "[t]he reasoning of *York* extends to [plaintiffs' descendent] Johnson's medical records, the difficult patient file, and the emergency room procedures manual. Use, misuse or non-use of these items . . . did not support a claim under the Texas Tort Claims Act." *Kassen* goes on to also hold that "a claim of non-use of property . . . does not trigger waiver of sovereign immunity under the Texas Tort Claims Act." *See also Washington v. City of Houston*, 874 S.W.2d 791, 795 (Tex. App.SQTexarkana 1994; no writ) (construing *York* as disapproving cases such as *Petty*, holding use or nonuse of information in city's personnel files not within Act, and stating that contrary position "would expand the statute to the point that a plaintiff could characterize almost any act or omission as involving the use of tangible property.").

Other cases have distinguished *Salcedo* on the ground that the item "used," generally some official record or permit, was merely a piece of paper evidencing some action or information which is the

13

real source of the alleged negligence.  *See, e.g.*, *Jefferson County v. Sterk*, 830 S.W.2d 260 at 262-63 (Tex.App.SQBeaumont1992) (arrest warrant was not personal property to support action under the Act; court did not reach question of whether "non-use," or failure to remove warrant from active files, established liability); *Eakle v. Texas Dep't of Human Servs.*, 815 S.W.2d 869, 872-73 (Tex. App.SQAustin 1991, writ denied) (plaintiffs, suing for injuries to son at "registered family home" named on list obtained from defendant, failed to state claim under the Act; negligence complained of related to background check of home required before compiling list); *Wyse v. Department of Public Safety*, 733 S.W.2d 224, 228 (Tex. App.SQWaco 1986, n.r.e.).

Similarly, Campbell's claims for negligent use of the SAPD identification materials actually allege the misuse of the information contained in the identification materials.  In substance, she contends that Vidal drew the wrong conclusion from what he observed in the materials.  Drawing and/or communicating the conclusion itself is the alleged negligence.

Further, under section 101.021(2) the governmental unit is liable only if it "would, were it a private person, be liable to the claimant according to Texas law."  As discussed below in relation to Vidal, Campbell has not alleged any negligence that would be actionable under Texas law if committed by a private person.  Hence, she has alleged no liability on the part of the City under section 101.021(2). *See Wyse* at 228. *Cf. Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex. App.SQWaco 1990, denied) (§ 101.021(1)).

14

We conclude that Campbell has not alleged a violation of the Act for which the city may be held liable.

B.  Claims Against Vidal Individually

As to Vidal, Campbell's allegations are in essence that he negligently misidentified her to another law enforcement officer or the District Attorney as the person from whom he had purchased cocaine in April 1990.  There is no allegation that Vidal was actuated by malice or did not actually believe that his identification was correct.  We are not cited to, and we are unaware of, any Texas authority holding that Campbell has a cause of action against Vidal for such a merely negligent misidentification.  We have long held that we will not create "innovative theories of recovery" under local law.  *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1217 (5th Cir. 1985).  *See also, e.g., Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 11 (5th Cir. 1992); *Mitchell v. Random House Inc.*, 865 F.2d 664, 672 (5th Cir. 1989); *Graham v. Milky Way Barge Inc.*, 824 F.2d 367, 381 (5th Cir. 1987); *Harmon v. Grande Tire co.*, 821 F.2d 252, 259 (5th Cir. 1987).  Such restraint is particularly appropriate in the present context.

The question of providing citizens civil redress for incorrect arrest or prosecution for or accusation of crime is not of recent origin, but rather has long been addressed by the Texas common law in diverse causes of action, each of which has strict limitations that have been dictated by recognized public policy concerns. Recognition of Campbell's asserted cause of action would sweep away these limitations, contrary to the public policy on which they

15

rest.  This is evident from a consideration of the two torts which are most analogous to Campbell's situation, namely libel and slander, and malicious prosecution.  Each of these torts requires a greater culpability than mere negligence.[11]

In cases of libel and slander, Texas has long recognized *at least* "a qualified privilege" for "the communication of alleged wrongful acts to an official authorized to protect the public from such acts."  *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ.

---

[11]     As noted, Campbell does not challenge the lawfulness of her arrest, and "[i]t is a complete defense to an action for false arrest or imprisonment that the arrest or detention was executed by virtue of a process legally sufficient in form and duly issued by a court having jurisdiction to issue it."  *Sanchez v. Garza*, 581 S.W.2d 258, 259 (Tex. Civ. App.SQCorpus Christi 1979, no writ).  *See also Pete v. Metcalfe*, 8 F.3d 214, 218-219 (5th Cir. 1993).

Nor does Campbell challenge the method by which her arrest and detention were effectuated, *i.e.* there is no claim of excessive force or the like.

Moreover, it is plain that Campbell is not asserting abuse of process, which relates not to the issuance or origin of the process but to its abuse "after its issuance."  *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App.SQCorpus Christi 1978, n.r.e.).  *See also Tandy Corporation v. MacGregor*, 527 S.W.2d 246, 249 (Tex. Civ. App.SQTexarkana 1975, n.r.e.). Further, abuse of process requires wrongful motive or intent on the part of the defendant, not mere negligence, as one of its necessary elements is that "the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process."  *Martin* at 769.  *See also Tandy Corporation* at 249 (same).  *Cf*. RESTATEMENT (SECOND) OF TORTS § 682; *Id*. comment b ("The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it").

What Campbell in essence complains of is the origin of the process by which she was detained (Vidal's allegedly negligent misidentification of her to other law enforcement officers or the district attorney as the person from whom he purchased cocaine in April 1990), *not* its validity, execution or use.

16

App.SQCorpus Christi 1977, no writ).[12]  "The effect of such privilege is to justify the communication when it was made with proper motives and without actual malice." *Id*.  The communication is privileged unless made "with the knowledge that . . . [it] was false or with reckless disregard for whether it was false." *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.SQHouston [1st] 1984, n.r.e).[13]  Further, the privilege is not defeated by "[n]egligence, failure to investigate . . . [or] failure to act as a reasonably prudent man . . ." *Id*.[14]  The privilege is founded on "a strong public policy consideration," it being "vital to our system of criminal justice" that there be the ability "to communicate to peace officers the alleged wrongful acts of others without fear of civil action for honest mistakes." *Zarate* at 655.  To allow Campbell a cause of action for Vidal's negligence in telling law enforcement personnel that Campbell was the person from whom he purchased cocaine is to negate the justification that the law of libel and slander gives to such a

---

[12]   *Cf*. RESTATEMENT (SECOND) OF TORTS § 598A (inferior administrative officer, where not absolutely privileged, has conditional privilege for "communication required or permitted in the performance of his official duties").

[13]   *See also Ryder Truck Rentals v. Latham*, 593 S.W.2d 334, 341 (Tex. Civ. App.SQEl Paso 1979, n.r.e) (same); RESTATEMENT (SECOND) OF TORTS § 600 (same).

[14]   *See also Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 924 (Tex. App.SQCorpus Christi 1991, dissm'd w.o.j.) (same); *Mayfield v. Gleichert*, 484 S.W.2d 619, 627 (Tex. Civ. App.SQTyler 1972, no writ) (same); RESTATEMENT (SECOND) OF TORTS § 600, comment b ("mere negligence as to falsity" does not defeat a conditional privilege).  "'If one makes a statement, believing it to be true, he would not lose the protection arising from the privileged occasion, although he had no reasonable ground for his belief.'" *Mayfield* at 627.

17

communication so long as it is made believing it to be true; and allowing such a cause of action would be contrary to the public policy that is the foundation for that justification.[15]

The tort of malicious prosecution[16] requires, among other elements, not only that there have been a want of probable cause but also, and independently, that the defendant have acted with "malice." *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982); *Stringer v. Cross*, 564 S.W.2d 121, 123 (Tex. Civ. App.SQBeaumont 1978, no writ) (finding only proof of malice wanting); *Parker v. Dallas Hunting and Fishing Club*, 463 S.W.2d 496, 499 (Tex. Civ. App.SQDallas 1971, no writ) ("a defendant in a malicious prosecution action is not liable where there was no probable cause if he was not actuated by malice"); *Yianitsas v. Mercantile National Bank at Dallas*, 410 S.W.2d 848, 850 (Tex. Civ. App.SQDallas 1967, no writ); *Montgomery Ward v. Kirkland*, 225 S.W.2d 906, 908 (Tex. Civ. App.SQSan Antonio 1949, n.r.e.); *Deaton v. Montgomery Ward & Co.*, 159 S.W.2d 969, 972 (Tex. Civ. App.SQBeaumont 1942, w.o.m.) ("The failure of the plaintiff to establish either malice or want of probable cause . . . is fatal to

---

[15]     We observe that on public policy grounds Texas has refused to recognize the separate tort of false light. *Cain v. Hearst Corp*, 878 S.W.2d 577 (Tex. 1994). The *Cain* court noted that if not subjected to all the strictures, limits, and restrictions of defamation actions, false light might allow recovery for speech in instances where such would not be allowed under the law of libel and slander. *Id*. at 582-83. The *Cain* court stated "we decline to restrict speech in any manner beyond our existing tort law." *Id*. at 583.

[16]     We note that at least one recognized treatise has referred to "the substantial similarity if not outright identity between the malicious prosecution action and the defamation suit." *See* PROSSER AND KEETON ON TORTS at 886 (5th ed. 1984).

18

his cause of action"). *See also* RESTATEMENT (SECOND) OF TORTS § 668 (malicious prosecution requires that "the proceedings must have initiated primarily for a purpose other than that of bringing an offender to justice"). Here, there is no allegation of malice, ill will, or improper purpose, or that the misidentification was other than an honest, though negligent, mistake. Nor do the facts alleged suggest otherwise. There is no indication that Vidal ever knew Campbell, or had any reason to bear her any ill will, or had any reason to misidentify her. In these circumstances, there is no malice, as the Texas courts have held in analogous circumstances, *Stringer*, *Yianitsas*, even where it is obvious that the misidentification was negligent. *Yianitsas* at 850, 851.

Texas courts have long recognized a strong public policy behind the various restrictions and limitations applicable to malicious prosecution suits complaining of criminal proceedings, namely that "public policy favors the exposure of crime." *Parker* at 499. *See also Kirkland* at 909 (same); *Yianitsas* at 851.[17] This "public policy . . . requires and demands that the rules governing such actions be strictly adhered to." Parker at 499. See also Kirkland at 909; *Daughtry v. Blanket State Bank*, 60 S.W.2d 272, 273 (Tex. Civ. App.SQAustin 1933, no writ).

To hold, as Campbell would have us do, that Vidal's negligent misidentification of her is actionable would in substance convert the Texas tort of *malicious* prosecution to one of *negligent*

---

[17] Similarly, such actions are said to "have never been favored in law." *Parker* at 499. *See also Stringer* at 122 (same); *Kirkland* at 909; *Deaton* at 972; *Daughtry v. Blanket State Bank*, 60 S.W.2d 272 at 273 (Tex. Civ. App.SQAustin 1933, no writ).

19

prosecution.  This we decline to do.[18]

Moreover, "there is no general duty in Texas not to negligently inflict emotional distress.  A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty."  *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).[19]

---

[18]    We note the following decisions from other jurisdictions taking a similar approach.  In *Lundberg v. Scoggins*, 335 N.W.2d 235 (Minn. 1983), the Minnesota Supreme Court held that "a complaint of negligent accusation and misidentification of a criminal suspect" fails to "state[] a claim upon which relief can be granted," noting that "our decision is controlled by a well-established body of law relating to an analogous claim of malicious prosecution."  *Id*.  In *Pokorny v. First Federal Savings & Loan association of Largo*, 382 So.2d 678 (Fla. 1980), the Florida Supreme Court stated:

> "Florida courts have never recognized a separate tort for 'negligently' swearing out a warrant for arrest. Such cases may be brought only in the form of civil suits for malicious prosecution . . . [citations omitted].  A plaintiff contending that he had been improperly arrested as the result of negligence in swearing out a warrant must bear the burden of establishing malice and want of probable cause.  Mere negligence alone is insufficient."  *Id*. at 683.

*See also, e.g., Reaves v. Westinghouse Electric Coop*, 683 F.Supp. 521, 523 (D. Md. 1988) ("The tort of false arrest is predicated upon *knowing* misconduct . . . [citation omitted]  Negligence or other mistake in providing incorrect information to lawful authorities does not give rise to liability.").

[19]    As to the tort of negligent misrepresentation:

> "To recover for negligent misrepresentation, the plaintiff must prove that:  (1) the defendant made the representation in the course of business or in a transaction in which it has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) *the plaintiff suffered pecuniary loss by justifiably relying on the representation*."  *Milestone Properties Inc. v. Federated Metals Corp*., 867 S.W.2d 113, 118 n.6

Campbell has not stated a Texas law claim against Vidal.

The district court correctly dismissed the state law claims against the City and Vidal.

## Conclusion

For the reasons discussed above, the judgment of the district court dismissing Campbell's amended complaint is

AFFIRMED.

---

(Tex. App.SQAustin 1993, no writ) (emphasis added).

Here, any misrepresentation by Vidal was not made to Campbell, and she did not rely on any misrepresentation by Vidal. In a case where an arrestee brought suit for negligent identification of him to the police, a New York appellate court sustained dismissal of the suit and rejected "negligent misrepresentation" as a basis for recovery "[b]ecause it was the police and not plaintiff who relied upon [defendant] Brown's identification." *Collins v. Brown*, 129 A.D.2d 902, 514 N.Y.S.2d 538, 540 (N.Y. Appellate Div. 1987).